Will the argument next to Aronshtein v. United States, 21-518. Counsel. Good morning, your honors. Ezra Spilkey for Dmitry Aronshtein. May it please the court. Mr. Aronshtein is serving a sentence that is double what the law allows for the crime he actually committed, which is bribery. It's an unlawful sentence and Aronshtein is, it was imposed because Mr. Aronshtein's trial and appellate counsel completely overlooked a complete defense, which is that money laundering transactions must be distinct from the payments associated with the predicate offense. I don't understand your argument that they overlooked this because they had argued the, they were both involved in the, in a case where this issue was front and center. Right, that's true in this, I'm sorry judge. It seems to me that I welcome your thoughts on this, that the notion that they simply were not aware of this argument strikes me as somewhat implausible. So what am I missing? Right, so there's thousands of ways a lawyer might miss an argument and I think your honor is referring to the Seur case or at Seur case. Seur. Seur, and the fact that they were both on it, the work might have been divided one to the other, but the fact that there is an argument out there and you didn't apply it to the facts of a certain case, that's, that's, you know, that's one way to overlook an argument. Another, another indication is that the attorney said that it wasn't on her radar screen and it's pretty conclusive that what she meant there was that she overlooked it and missed it and if there was any ambiguity there, there should have been a hearing on that subject, but I think it's pretty clear she was responding to the fact that the government had said without consulting her that this was a strategic decision to not advance this argument and she says actually it wasn't a strategic decision, this wasn't on our radar screen. My problem is a different one. The jury was instructed here that to convict Mr. Ehrenstein of money laundering or anyone else, I guess, if there was anyone else in the trial charged with that, they had to find that the property that was the subject of the money laundering, alleged money laundering transactions, were proceeds of fraud or bribery and I've always thought that, and I've encountered the city time scandal in previous matters, I've always thought it was a little odd to think of this, it's not a prototypical bribe. Usually if I'm bribing a government official to get a lucrative contract, I'm not giving him 80 percent of the profits. This is a case in which Mazur, the government's was exactly the same as what Prime View did and in Prime View it was Mazur who approached the proprietor of Prime View and said let's split this 80-20 and I'm going to run this money through you and in particular with respect to Ehrenstein, there was evidence that Ehrenstein's company was not really competent to do this stuff in the first place and barely did much of it anyway and so what was really going on here is that Mazur has set up this fraudulent scheme to put money from the city through Teledyne to these companies that aren't really doing very much and then bring that all back into his pocket. So Ehrenstein is kind of his bag man in a sense. Now if that's the government's theory of what's going on, Ehrenstein I don't think needs to be all that the jury has to find is that he knew that this was the proceeds of something unlawful which he clearly knew because Mazur was setting up this whole scam through him. So why isn't he then engaging in transactions to obscure the origins of the proceeds of Mazur's fraud and how is the evidence, how would that, presenting to the jury the argument that this isn't so because we got the judge to instruct you that there's this merger thing and you have to decide somehow whether the transactions here are equivalent to the bribes or something like that, that's not a very appealing argument and it's one the government could easily have responded to by saying no, it's just very simple and straightforward, Mazur set up a fraud, Ehrenstein knew that what was going on here was something illegal and he knew that he was putting the proceeds of Mazur's plot into deceptive accounts and that's money laundering as clear and clean as you could possibly want. So if they had raised this argument, how is this such a winner that the failure to raise this argument desperately prejudiced Ehrenstein's defense? Right, so Mr. Ehrenstein did go to trial with two co-defendants, Gerald Deneau and the late Mark Mazur. Gerald Deneau was in charge of sort of the technodyne fraud. He's the guy who arranged the technodyne. He and Mazur are the key guys. I understand your point that Ehrenstein is being treated as badly as these other guys who are the central figures. I get that point but that's not something that we're dealing with on 255. The reason why I'm bringing it up is that there were other reasons to charge money laundering and the indictment and the government's proof and everybody knew that the fraud was Gerald Deneau's and Mark Mazur's and so Gerald Deneau is in charge of the technodyne part of it. Mazur is doing something similar with the sub-subcontractors and arranging all these sub-subcontractors. The fact that, you know, the government's saying now that Ehrenstein's company wasn't competent to do this, well, it was a new company. It would have been mothballed or whatever but the fact that it's a new company doesn't make it incompetent. He's supplying labor. That's a jury argument. What we're really talking about here is that Mazur sets this up. You know, I don't think anyone ever suggested that Ehrenstein decided I want into this contract and the only way I can do it is to pay a bribe to Mazur. Mazur and Darnot set up this whole scam to get the money out of the city and Ehrenstein plays a certain role and that role looks like not even in chief. One of the money launderers who are going to take the money that Mazur has set up a scheme to extract and bring it back into his pocket. Well, as far as Ehrenstein's supposed awareness of the fraud, he's not a participant in this. This fraud is overbilling. It's about putting too many workers. 1956H, which is a conspiracy to commit money laundering, that's right. Absolutely in the money laundering piece but if you look at the indictment, if you look at the proof, if you look at what everybody's saying at the time, they're saying you committed money laundering by paying these bribes. That's what they're saying. Nobody ever says he's aware of the overbilling. Nobody says that he's aware of the overbilling, right? It doesn't have to be specified unlawful activity, does it? If he knows that it's unlawful, he doesn't have to know the details of exactly what crime. Well, this isn't a sufficiency standard. This is a record tainted by this oversight and this record would be completely different had the trial counsel said, look, you cannot use, jury, you cannot use these same payments, this bribe payment. But I don't think that's true, you see. That's true. You know, the government may have argued it that way because the merger theme wasn't sounded. But if the merger, the question is, what would have happened if the merger theme had been sounded? And I'm suggesting that the case may indeed have played out very differently, but not in a way more favorable to Arenstein. Arenstein testified and put to the jury the idea that he didn't know what was going on here. He thought this was all legit or something. I can't even repeat it to you because it seems so incoherent to me that I can't get the details of exactly what he said. The jury didn't buy it. The jury thought he knew perfectly well that he was handling money that was the product of some kind of criminal activity by Mazur. I don't totally agree with that, Judge. That's what the jury was instructed they had to find. Right. And if you, but the jury also had the indictment which says that as far as what his participant participation was, first of all, he's not mentioned in count one, but in count 12, his participation in the money laundering, that's the money laundering count, his participation in the money laundering is that he's paying the bribes to these quote-unquote first order shells. That's, we discussed this in our reply brief at pages five to six. Sorry about that. We discussed this in our reply brief at 10 to 13. The indictment says Mark Mazur and other people, including Dimitri Ehrenstein, participate in this money laundering to conceal the 25 million dollars in kickbacks he received on city time from Dimitri Ehrenstein. And then what follows are several paragraphs of these other people doing. The kickback is not exactly the same thing as saying he's committing bribery. What he's doing is, you can characterize it a lot of different ways. You could call it a bribe, you could call it a kickback, but what it is is Mazur's scheme to extract money and Ehrenstein is playing a role in that scheme and the role is to hide the money by going through various transactions so that it will not appear that this is Mazur's fraud scheme. It will look like a legitimate business transaction. That's exactly what he's doing. That's exactly, it seems to me, what the jury found he was doing. And it's a little bit of a verbal trick to say, ah, but you can characterize it as a bribe. The funny kind of bribe. It's a bribe that is taking the form of a kickback on a scheme where he's not the main beneficiary who's bribing somebody to get into this. He's a tool of the fraudsters and playing a witting role. I just don't understand how, if this theme had been sounded, the government might have had to rejigger some of the ways it spoke, but I don't see how there's prejudice. Well, it was a quid pro quo and it was charged three times and he was found guilty of bribery. I mean, the bribery is charged three times. He can be guilty of bribery, but he can also be guilty of other things. But those same payments cannot form the basis of both bribery and money laundering. Only if the theory is that this is the proceeds of a bribe, when it's actually a bribe. But a bribe can also be the proceeds of a fraud. And that's what this was. Well, the bribe and the proceeds are characterized as they're the same thing. Were there subsequent transactions that the government at least charged and then I think that there was evidence in the during the trial of this that followed the initial bribes, kickbacks, whatever, however you want to describe them. And why isn't that sufficient? As subsequent transactions that use the proceeds from the initial transfer to the first year shelves. Because there's no evidence of his participation in those secondary transactions. So you say participation and that's why I asked, he's charged with 1956H. Right. So if he does that and then he is subsequently well aware of why the later transaction, of the nature of the later transactions, why isn't that enough? Well, we're looking at the totality of the evidence. If the trial counsel had raised the merger defense, they would have shown a spotlight on those secondary transfers. And what the jury would have found, because there's no evidence, they would have found that there's no, he wasn't involved in those further steps. I think we've got the argument that you deserve some time for rebuttal. Thank you. Good morning, your honors, and may it please the court. My name is Matthew Andrews and I represent the United States in this matter. The appellant, Demetri Ehrenstein, was convicted of embezzlement and money laundering following a nearly month-long trial. The evidence against him was overwhelming and included financial records and witness testimony showing that Ehrenstein... Would you just address directly the points that your counsel on the other side, you found on the other side, made? Yes, your honor. I guess counsel's main argument here, with regard to the bribe theory, I'll address the fraud theory here, but counsel's main argument is simply that Mr. Ehrenstein allegedly had no knowledge that when he transferred the money to the first-tier shells, that the money would go anywhere else. And that is flatly inconsistent with what he, the evidence of trial, and what he was convicted for. There's no dispute here that Ehrenstein was charged with and convicted of agreeing to pay bribes to Maser. And there's also no dispute that Ehrenstein paid the bribes initially to a first-tier shell companies, held by co-defendants rather than Maser directly. So the entirety of defense counsel's argument is that there is no money laundering, because it did not involve the proceeds of a previous completed activity. And that is flatly inconsistent with this court's decision in Zewer, where the court held that it does not need to be completed criminal activity, but simply just a completed phase of the criminal activity. And that is exactly what happened here. From day one, the government alleged that Ehrenstein participated in a money laundering conspiracy involving multiple phases. Charged the indictment, Ehrenstein sent bribes to a first-tier shell companies, co-defendants in the matter, relatives of Maser, after which the bribes are then transferred to a second-tier of shell companies. And this is classic money laundering. Your common sense tells you that Maser and Ehrenstein knew that if Maser gave millions and millions of dollars directly to Ehrenstein, if Ehrenstein gave millions of dollars directly to Maser's bank accounts, they would be found out. This is an interesting question, if that's your theory. Because why isn't it the case? A classic bribery deal. I'm bidding on a government contract. It's going to make a lot of money for me. I go to a government official, who's in charge of this process, and I say, if you rig this for me, I'm going to give you this much money. Okay, that's straight up bribe. And then I say, okay, here's the money, what do you want me to do with it? And he says, put it in this bank account. And I do. I'm guilty of conspiracy to... It's not in his name, of course. But I'm guilty of conspiracy to launder money because I know that he is going to somehow figure out a way to get it out of this other account into his own pocket. In that circumstance, your honor, because the agreement is to pay the bribes to him as opposed to a third party who controlled that bank account, a jury could reasonably, in those circumstances, that this is a money laundering conspiracy. Because Mr. Ehrenstein understood under those circumstances that that money would not simply sit in that bank account for perpetuity. It would be involved in a bribe. Or in a certain way, the bribe. Because the money is... Until it gets into that account, it hasn't been paid as a bribe. Now it's a bribe. And then it is also the proceeds of the bribe. And so there's always going to be money laundering connected to a bribery scheme unless I'm putting the cash into the hands of the government official. Or unless maybe you put the money into his bank account with his name on it. Yes. And any other way of committing bribery that tries to disguise the fact that this is a bribe is inherently money laundering. Well, I think... Or conspiracy, at least, to commit money laundering. I wouldn't... I'm always afraid of going to the extremes in answer to a question. Don't go too far. Yes. Yes. But look, the question for the court was set forth within Zuer and McCarthy is, when does it become proceeds? And Zuer and McCarthy had a very easy answer to that, which is, when does it come into the hands of the perpetrators? When is the crime complete? When is the person guilty? Right? So think of it this way. When Ehrenstein transferred the bribes to the first tier shell companies, if those relatives decided to double-cross Mazur and never gave Mazur that money, he would still be guilty of bribery. So you know at that moment, the bribery offense, for the purposes of guilt or innocence, is complete. Thus, any subsequent transactions involve the proceeds of the bribery. And that's a very simple, very straightforward test that was applied in McCarthy when the court was dealing with embezzlement. And it was also applied the same way in Zuer when the court was dealing with fraud. It's just, when did the proceeds go in the hands of the other co-defendants in the scheme? And that happened moment that the money entered the bank accounts of the co-defendants. And I suppose the reason you don't like my theory that the money was the proceeds of the crime when it got to Ehrenstein in the first place is because you didn't really, the government didn't argue that to the jury. Well, we didn't argue. Well, I think per your Honor's point, we didn't argue it to the jury because we didn't need to argue it to the jury. But I think your Honor is entirely correct that in a scheme like this, the proceeds at the very earliest did become proceeds the moment that money was paid out of the city to Ehrenstein's company. And there's a specific reason for that, which is that Ehrenstein's company was never qualified to participate in the city time program to begin with. The only reason they were there is he agreed to a bribery scheme. So that is the agreement that is required under the relevant bribery statute. And as a result, any money paid from the city as a result of this unlawful agreement, this quid pro quo, are proceeds of the bribery scheme. And as a result, once it hit Ehrenstein's bank account, once he had the proceeds of the bribery scheme, i.e. the money that he was never entitled to, all of the subsequent transactions, those also involved proceeds of a bribery scheme. It's very simple when applied to the facts of this case. Your friend on the other side used the word participation, subsequent participation in the subsequent financial transactions. Is that correct or is that wrong? Oh, you don't need subsequent participation. It's a quintessential conspiracy, Your Honors. And as everybody knows, in a conspiracy, all you need is an agreement. And I think the district court's instructions were very informative on this matter. And of course, defense counsel does not claim that the district court's instructions were wrong in this matter. And the district court instructed the jury, I instruct you that to become a member of the conspiracy, the defendant need not know the identities of each and every other member, nor need he be apprised of all their activities. Moreover, the defendant need not have been fully informed as to all the details or scope of the conspiracy in order to justify an inference of knowledge in this part. Furthermore, the defendant need not have joined in all the conspiracies on Mr. Aronson made a similar argument as he now presses today, which is, well, there was no evidence that I knew about all these other aspects of the bribery conspiracy scheme. And that panel rejected that argument, holding that you do not need to know all the details because you were charged in a conspiracy. But he certainly knows that the money is not supposed to stop with the what he was convicted of. That is the beginning and end of it. Any reasonable juror having found that he had an agreement to pay Mark Mazur knows that if he pays it to another bank account first, that money is going to still go to Mark Mazur. That is what they are finding by holding, or rather by convicting him of agreeing to pay bribes to Mazur. Now, with regard to your honor's other point, which was with regard to the proceeds. So this is essentially not just a bribery, but also a fraud. I believe your honors are also entirely correct in that there's no requirements for Mr. Aronson to have participated in the underlying fraud. But rather, the money laundering statute only requires that the person knew that the property involved in the transaction represented the proceeds of some form, though not necessarily which form, of activity that constitutes a felony under state, federal, or local law. So there's no requirement that he participate in the fraud. There's not even any requirement that he know that it's a fraud. The only requirement is that he engaged in the transactions knowing that this is some proceeds of some crime, and that it, in fact, is the proceeds of specified unlawful activity. And the court addressed precisely this question in United States v. Stravoulakis, 952 F2D 686, where you had two individuals engaging in a money laundering transaction. One of them thought it was narcotics. The other one thought it was gambling. And they tried to raise a defense so that there was no meeting of the minds. And the court said, no, no, no. It's not necessary for you to agree on the specified unlawful activity. All that's required is that there be specified unlawful activity, and you agree to launder the proceeds of some form of criminal activity. And unless the court has any additional questions, I'll rest on my submission. Thank you, thank you. Counsel? Yes. My colleague talks about the sewer case and about phases of there need only be, not, there doesn't need to be a completed crime. There needs to be a completed phase of a crime. But the sewer case also talks about distinctness. These payments need to be distinct from each other. They need to be different. And in this case, they're one and the same. And the idea that that he knew that they were, that his payments, payments to him were the, were the proceeds of some illegality, of course he does. He knows that they're the, the, the result of bribes. That's part of the bribery crime. My point about participation is only that it's all about the knowing. It's about knowingly entering into the agreement, knowing what the scope of it is. I know you don't need to know every objective, but you also need to know that these transactions. So, Judge Lynch asked a series of questions about the efforts to conceal, efforts by your client to conceal these subsequent transactions. Isn't that enough for a jury to determine that those are distinct transactions in connection with the money laundering conspiracy scheme? Well, he paid, he paid shell companies. And that was his effort to conceal. That's it. And that payment to the shell companies are bribery. And they need, those payments need to be distinct from money laundering transactions. But what happens, what the government's saying now is that these transactions that happen afterwards that are done by Maser and all Maser's family is attributable to Ehrenstein. But there's, I mean, even if there is some support in the record for that, it's weak. And, and this is, Strickland speaks about this when it talks about the totality of the evidence. A conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming support, record support that is. That's from 690, that's pages 695 to 696. And with the merger defense, with the, with counsel advancing the merger defense, telling the jury you cannot use this bribe payment, it would focus the whole case on whether he agreed to, to the rest of the transactions afterwards. And I take Judge Lynch's point. You have, every time you don't put, put cash in someone's hand, a bribe payment right in someone's hand, then, you know, you should know, you should have constructive knowledge that you're also participating in money laundering. And I think there needs to be more there. Thank you. Thank you, Judge.